**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| In re: | § § § | |
| | § | Case No. 23-42104 |
| TIGHT ENDS SPORTS BAR & GRILL, LLC, | § § | |
| | § | Chapter 11 |
| Debtor. | § § | |

**MOTION TO DISMISS WITH PREJUDICE, OR IN THE ALTERNATIVE,
CONVERT TO CHAPTER 7, PURSUANT TO 11 U.S.C. § 1112(b)**

Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you **must** file a written objection, explaining the factual and/or legal basis for opposing the relief.

No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading **WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE** shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserved the right to set a hearing on any matter.

Salt & Pepper Restaurants Inc. (the "Movant"), plaintiff in a state court action that was the primary (if not sole) motivation for the commencement of this case (the "Case"), which is filed under Subchapter V of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), hereby files this motion to dismiss this case for cause, or alternatively, to convert the Case to Chapter 7, pursuant to 11 U.S.C. §§ 1112(b) or 1182 (the "Motion") and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.  This Case serves no legitimate bankruptcy purpose and was filed in bad faith as a litigation tactic to delay trial in state court. The Debtor filed this Case on the eve of trial of the

4875-8510-1728

State Court Action (defined below) to delay the Movant's years long efforts to obtain adjudication of its claims in state court.

2. As discussed below, the Debtor claims to conduct no business, it has no employees, and it holds no assets. This Case is essentially a two-party dispute between the Movant and the Debtor (and its non-debtor principal Timothy Dungan, who is a co-defendant in the State Court Action).

3. As detailed herein, this Case was not filed to reorganize under Subchapter V of the Bankruptcy Code. There is no reasonable prospect that the Debtor can present a confirmable Subchapter V plan of reorganization—consensual or otherwise. The Debtor has no insurance, the Debtor has not filed its required monthly operating reports, the Debtor has yet to open a required DIP bank account and the Debtor has failed to file complete and accurate schedules and statements of financial affairs, including but not limited to a complete listing of all insider transfers. Rather, as is clearly evident from the record and Mr. Dungan's own testimony in the 341 Meeting (defined below), the Debtor filed this Case as a litigation tactic to delay trial in the State Court Action and did so in bad faith.

4. For these reasons and as fully stated below, the Movants request that the Case be dismissed, or in the alternative, that the Case be converted to a case under Chapter 7 of the Bankruptcy Code so that a trustee can address how best to handle the State Court Action and the assets of this bankruptcy estate. The Debtor is also not authorized to be a debtor under Subchapter V of Chapter 11.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

2

4875-8510-1728

6. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory bases for the relief sought is section 1112(b) of the Bankruptcy Code, rules 1017(f)(1) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 7007-1 and 9014-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Texas (the "Local Rules").

## PROCEDURAL HISTORY AND BACKGROUND

**A.    Bankruptcy filed 30 minutes before trial.**

1. Movant filed suit against Tight Ends Sports Bar & Grill, LLC[1] (the "Debtor") and Timothy Dungan ("Dungan") on April 20, 2022, in the 56th Judicial District Court of Galveston County, Texas under Cause No. 22-cv-0675, with BankSouth also named as a garnishee (the "State Court Action").

2. Plaintiff asserted claims for breach of contract and other claims against Debtor and Dungan in the State Court Action. The State Court Action related to a bar and grill located in League City, Texas called "Tight Ends." The Debtor operates another Tight Ends location in Plano, Texas (the "Plano Location"). As explained below, the Debtor has allegedly transferred assets (but not in reality) to a new entity he owns called TE North Texas, LLC, postpetition (the "Transferred Entity").

3. Debtor and Dungan answered the state court petition and the Debtor asserted counterclaims against Movant in the State Court Action. Movant filed a traditional motion for partial summary judgment and a motion for summary judgment on Debtor's counterclaims. The trial court entered orders on February 7, 2023, denying both of Movant's motions for summary judgment.

---

[1] Please note that the Debtor improperly named the Defendant in this case as Tight Ends Sports Bar & Grill, Inc. instead of its real name Tight Ends Sports Bar & Grill, LLC.

3

4875-8510-1728

4. Movant filed its first amended petition against Debtor and Dungan on June 1, 2023. Movant filed a motion for summary judgment on Debtor's counterclaims on August 23, 2023. Movant also filed a motion for summary judgment on September 18, 2023. After briefing and a hearing, the Court entered an order on September 18, 2023, granting summary judgment for Movant and dismissing Debtor's counterclaims. Therefore, the only remaining claims amongst the parties to proceed to trial are the Movant's claims. A bench trial was scheduled to commence in the State Court Action on Movant's claims against the Debtor and Dungan on November 3, 2023, at 10:00 a.m. Counsel for Movant and Defendant appeared at the scheduled trial and the trial court asked Movant's counsel to proceed to trial before being advised of Debtor's bankruptcy filing.

5. Without notice, Debtor filed its petition pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Eastern District of Texas, Sherman Division on Friday, November 3, 2023, at 9:14 a.m. (the "Petition Date") under case no. 23-42104.

6. The Court in the State Court Action held multiple hearings, became intimately familiar with the facts and legal arguments of the parties, as evidenced by the Court's rulings on several motions for summary judgment. All deadlines had passed in the State Court Action and the only thing remaining was conducting the actual trial.

7. On the Petition Date, Debtor filed a notice to remove the State Court Action to the United States Bankruptcy Court for the Southern District of Texas and it was assigned adversary proceeding no. 23-03245. Thereafter, an order was entered on December 18, 2023 by the Court in the Southern District transferring the adversary proceeding to this Court, and it was assigned adversary proceeding no. 23-04100.[2]

---

[2] A hearing on Movant's motion to remand the adversary proceeding is scheduled for February 6, 2024, before this Court.

4875-8510-1728

8. Movant is a creditor and party in interest. Movant has filed a proof of claim herein asserting a claim in the amount of $704,342.53, plus additional postpetition attorneys' fees, interest and costs as may be allowed by applicable law.

**B. Debtor Files Bankruptcy in Bad Faith to Forum Shop**

9. Debtor filed its *Debtor's Code ¸1118 (c) Status Report* filed on November 28, 2023 [Docket No. 22] (the "Debtor's Status Report") that states "[T]he centerpiece of Debtor's plan is the prosecution of its claims against the landlord…" and "prosecution of the claims against the landlord, will be funded by contributions by Tim Dungan." Debtor's original bankruptcy schedules filed on November 17, 2023 [Docket No. 16] (the "Original Schedules") show minimal assets other than purported claims against Movant and only about $50,000 of creditors' claims (excluding the claim of the Movant). Debtor's Original Schedules also show no employees, no revenues and no operations. The Original Schedules were signed under penalty of perjury by Dungan.

8. According to the Debtor's Original Schedules, the Debtor had no gross revenue:



9. The Original Schedules also show no cash or bank accounts (Schedule B, question 1); Debtor made no payments in the 90 day preference period or payments to insiders within 1 year (SOFA, questions 3 and 4); Debtor made no payments within 2 years to other persons other than in the ordinary course of business); no closed financial accounts (SOFA, question 18); and is not holding property for any other entity (SOFA, questions 21).

4875-8510-1728

10. The meeting of creditors under section 341 of the Bankruptcy Code was held on December 6, 2023 (the "Original 341 Meeting"). Dungan testified for the Debtor at the Original 341 Meeting. As reflected below and as admitted at the 341 Meeting, Dungan stated that the Debtor has no employees or ongoing operations, no revenue and no assets, including zero inventory.

| | | personal property | property |
|---|---|---|---|
| 80. | Cash, cash equivalents, and financial assets. Copy line 5, Part 1 | $0.00 | |
| 81. | Deposits and prepayments. Copy line 9, Part 2. | $35,000.00 | |
| 82. | Accounts receivable. Copy line 12, Part 3. | $0.00 | |
| 83. | Investments. Copy line 17, Part 4. | $0.00 | |
| 84. | Inventory. Copy line 23, Part 5. | $0.00 | |
| 85. | Farming and fishing-related assets. Copy line 33, Part 6. | $0.00 | |
| 86. | Office furniture, fixtures, and equipment; and collectibles. Copy line 43, Part 7. | $0.00 | |
| 87. | Machinery, equipment, and vehicles. Copy line 51, Part 8. | $0.00 | |
| 88. | Real property. Copy line 56, Part 9............................................> | | $0.00 |

C. **Debtor Caught Lying and Transfers Assets Post-Petition**

11. But this is not true. Prior to Original 341 Meeting, based upon publicly available information, Movant discovered the Debtor had reported the following revenue to the State of Texas for the sale of Alcohol and Mixed Beverages for every month in 2022 and 2023, including November and December 2023 and January 2024, post-petition:

Return Summary Original Return for Period Ending 11/30/2023 ( 2311)

| Location | Total Sales | Taxable Sales |
|---|---|---|
| 00001 TIGHT ENDS SPORTS BAR & GRILL 5584 STATE HIGHWAY 121 PLANO TX, 75024-6609 | 371,052 | 371,052 |
| **Totals** | 371,052 | 371,052 |

Total Taxable Amount: $371,052.00
Tax Rate: x .0825
Total Tax Due: = $30,611.79
Prior Payments: - $32,192.38
Penalty: + $1,530.59
Late Filing Penalty: + $50.00
Balance Due: = $0.00
Pending Payments: - $0.00
Total Amount Due and Payable: = $0.00

6

12. In addition, the Debtor reported revenue for the sale of food and other products to the Texas Comptroller for 2022 and 2023, including the following revenue post-petition in November and December 2023:

**LOCATION SUMMARY**

| Loc # | Total Texas Sales | Taxable Sales | Taxable Purchases | Subject to State Tax (Rate .0625) | State Tax Due | Subject to Local Tax | Local Tax Rate | Local Tax Due |
|---|---|---|---|---|---|---|---|---|
| 00001 | 192,588 | 192,588 | 0 | 192,588 | 12,036.75 | 192,588 | 0.02000 | 3851.76 |
| 00002 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0.02000 | 0.00 |
| SubTotal | 192,588 | 192,588 | 0 | 192,588 | 12,036.75 | 192,588 |  | 3,851.76 |

Total Tax for Locations           $15,888.51

**LOCATION SUMMARY**

| Loc # | Total Texas Sales | Taxable Sales | Taxable Purchases | Subject to State Tax (Rate .0625) | State Tax Due | Subject to Local Tax | Local Tax Rate | Local Tax Due |
|---|---|---|---|---|---|---|---|---|
| 00001 | 205,902 | 205,902 | 0 | 205,902 | 12,868.88 | 205,902 | 0.02000 | 4118.04 |
| 00002 | 0 | 0 | 0 | 0 | 0.00 | 0 | 0.02000 | 0.00 |
| SubTotal | 205,902 | 205,902 | 0 | 205,902 | 12,868.88 | 205,902 |  | 4,118.04 |

Total Tax for Locations           $16,986.92

Total Tax Due:           $16,986.92

Balance Due:           $16,986.92

Pending Payments:           - $0.00

Total Amount Due and Payable:           $16,986.92

13. When asked at the Original 341 Meeting, Dungan contradicted his original statements and admitted that the Debtor does report revenue to the State of Texas for the sale of its alcohol and does possess additional bank accounts that were not disclosed and did make transfers to insiders that were not disclosed. As a result, the Original 341 Meeting was continued to January 5, 2024, pending amended schedules that were due within two weeks. Dungan and his counsel failed to file timely amended schedules and failed to appear at the January 5, 2024 rescheduled 341 meeting. Counsel for the Movant appeared at the rescheduled January 5th 341

meeting, but the Debtor was a no-show, that resulted in unnecessary increased cost and expense to the Movant. Thus, the meeting was reset for January 18, 2024 at 3:30.

14. The Texas Workforce Commission filed a proof of claim in this case on January 30, 2024 [Claim No. 7] asserting a claim for unemployment taxes for the third quarter of 2023 based upon Debtor's total wages of $140,423.88. Thus, even the State of Texas asserts that the Debtor had operations in the third quarter of 2023, directly contrary to the bankruptcy schedules and the testimony of Dungan.

### D. Dungan Makes Post-Petition Fraudulent Transfers

15. At 3:30 pm on January 18th, the Debtor filed its latest amended schedules at docket number 32 (the "Third Amended Schedules")[3], but continued to fail to report any revenue, disclose the various transfer to insiders and continued to misrepresent the balance in its bank accounts. Prior to the 341 Meeting, the Debtor produced numerous bank statements and other documents reflecting a substantial amount of cash in the Debtor's bank accounts, which, as Dungan confirmed are derived from automatic credit card deposits from the sale of food and alcohol from the Plano Location. For example, Debtor had the following cash in its bank accounts for October and November 2023, respectively:

```
Account Title:          TIGHT ENDS SPORTS BAR & GRILL LLC
Professional Checking                   Number of Enclosures             1
Account Number          Acct Ending 5972 Statement Dates  10/02/23 thru 10/31/23
Previous Balance              70,700.58  Days in the statement period        30
    35 Deposits/Credits      801,783.50
   108 Checks/Debits         723,160.62
Service Charge                      .00
Interest Paid                       .00
Ending Balance               149,323.46
```

---

[3] The Debtor filed amended schedules on December 6, 2023 [Docket No, 24], but they were stricken by order of the Court on December 14, 2023 [Docket No. 26].

```
Account Title:        TIGHT ENDS SPORTS BAR & GRILL LLC
                      PPP STIMULUS ACCOUNT
Professional Checking                        Number of Enclosures              83
Account Number        Acct Ending 6715       Statement Dates  11/01/23 thru 11/30/23
Previous Balance                   .01       Days in the statement period      30
    35 Deposits/Credits      223,642.24
   109 Checks/Debits         223,642.24
Service Charge                     .00
Interest Paid                      .00
Ending Balance                     .01
```

16. Debtor continued to receive revenue from the Plano Location subsequent to the Petition Date, but Debtor continues to maintain that it does not possess any revenue or cash in its Third Amended Schedules. More importantly, despite producing the above-referenced bank statements for the account ending in 5972, Debtor continued making material misstatements about the existence of cash in its Third Amended Schedules:

| 3. | Checking, savings, money market, or financial brokerage accounts (Identify all) | | | |
|---|---|---|---|---|
| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| 3.1. | BankSouth 6715 payroll (balance as of Nov. 3 2023) | Payroll account | 6715 | $4,056.10 |
| 3.2. | BankSouth | Checking account (closed c. Nov. 3 2023) | 5972 | $0.00 |
| 3.3. | Prosperity Bank (balance as of Nov. 3 2023 petition date) | checking | 7432 | $11,000.00 |

17. The referenced bank statement for account number ending in 5972 had approximately $800,000 passing through it in October 2023, with a $149k balance on October 31, 2023. The Third Amended Schedules show the account was closed on November 3, 2023, and it had a zero balance. Thus, if the account had more than $0.00 in it as of the minute the bankruptcy petition was filed, the Third Amended Schedules materially misrepresent the Debtor's assets. If the Debtor withdrew the funds subsequent to the minute the bankruptcy petition was filed, it is an avoidable postpetition transfer that was not disclosed by the Debtor and the Court did not approve the transfer. In any event, whether the funds were withdrawn prepetition or postpetition, neither was disclosed in the Debtor's schedules or approved by this Court. Notwithstanding this bankruptcy pending for almost 90 days, question 4 of the statement

of affairs in the Third Amended Schedules states that payments to insiders is "To Be Supplied". In other words, all of the cash in Debtor's bankruptcy account (what appears to be hundreds of thousands of dollars per month) are not disclosed anywhere in Debtor's bankruptcy schedules.

18. Remarkably, in July of 2022, Dungan, on behalf of the Debtor, stated under oath as follows as it relates to Debtor's ability to satisfy Movant's claim:

> 7. Both Tight Ends and I personally deny that we do not possess property in Texas subject to execution in an amount sufficient to satisfy the alleged debt. Tight Ends has cash, cash equivalents, and accounts receivable in an amount greater than the alleged debt amount. I personally have cash, cash equivalents, stocks, and accounts receivable in an amount greater than the alleged debt amount.

19. In addition, Dungan produced the following bank statement from Prosperity Bank to corroborate his sworn statements:

**TIGHT ENDS SPORTS BAR & GRILL**
x7432
Available Balance         $595,981.07
Current Balance           $1,501,139.98
TIGHT ENDS SPORTS BAR & GRILL LLC

20. Yet, Debtor did not disclose in the Third Amended Schedules the existence of "cash, cash equivalents, and accounts receivables in an amount greater than the alleged debt amount." Moreover, in 2023, Debtor was taxed by the Collin County Appraisal District for $120,000 worth of personal property, but like other misrepresentations, Dungan failed to make this disclosure.

21. Despite all evidence to the contrary, Debtor states it transferred all operations of its Plano location in March of 2022 to a third-party called the Transferred Entity. During the 341 hearing, Debtor admits it received zero consideration for the alleged transfer and has zero documentation evidencing any such transfer. Dungan also testified that no documents exist evidencing a transfer of the operations of the Plano location to the Transferred Entity. Even if the Plano location real estate lease was appropriately transferred to the Transferred Entity, that does not mean the operations and assets at the restaurant are correspondingly transferred, especially when the Debtor's liquor license is being used and the Debtor owned personal property that was not transferred.

22. That is because Debtor did not transfer its operations to a third party until after Debtor was caught lying at the Original 341 Meeting. As reflected in its December 31, 2023 bank statements, Debtor, for the first time, is diverting revenue to the Transferred Entity.

```
Account Title:              TIGHT ENDS SPORTS BAR & GRILL LLC
Professional Checking                    Number of Enclosures                     0
Account Number          Acct Ending 5972 Statement Dates  12/01/23 thru 12/31/23
Previous Balance                     .00 Days in the statement period           31
    4 Deposits/Credits          4,930.31
    5 Checks/Debits             4,930.31
Service Charge                       .00
Interest Paid                        .00
Ending Balance                       .00
```

23. As reflected above, Debtor reported deposits in October and November in the amounts of $801,783 and $223,642, respectively. But by December, after being caught lying and a month after this proceeding was filed, the Debtor transferred all revenue to bank accounts at the same bank held in the name of the Transferred Entity and instructed its credit card vendor, Toast, to send all previous credit card deposits to a new bank account at BankSouth held in the Transferred Entity's name. To conceal its fraud and keep up the appearance of the Debtor allegedly having no operating income, Dungan testified multiple times that the Transferred Entity is using the Debtor's license to sell alcohol and mixed beverages. As the Debtor is fully aware,

11

such conduct is illegal in the State of Texas.[4] Regardless of the illegality, Dungan, like his continued false statements under oath, continues to disregard the bankruptcy process.

24. Although no plan of reorganization has been filed, the foregoing facts demonstrate the futility of doing so. The Debtor, postpetition, has allegedly transferred all known assets to a third-party related entity controlled by Dungan, the sole member and manager of the Debtor, to show it has no way of satisfying a claim by the Movant. The Debtor has further demonstrated the illegitimacy of this bankruptcy filing, by openly admitting that the sole reason for filing this Case was the Movants' lawsuit, which was set for trial on the eve of the Petition Date. For all of these reasons, as discussed in the next section, cause exists to dismiss this case as a bad faith filing.

## ARGUMENT AND AUTHORITIES

**I.   The Debtor's Case Should be Dismissed for Cause Under 11 U.S.C. 1112(b).**

**A.   Prima Facie Evidence of Bad Faith**

25. Pursuant to 11 U.S.C. §1112(b)(1), "on request of a party in interest . . . the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." Section 1112(b)(4) states that the term "cause" includes, among other things, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b)(4).

26. Although a debtor's lack of good faith in filing for bankruptcy is not listed in section 1112(b)(4), "a debtor's lack of good faith in pursuing bankruptcy relief has long been recognized as cause for dismissal of the case." *In re Stephens*, No. 21-40817-ELM-11, 2022 WL 534011

---

[4] Tex. Alco. Bev. Code Ann § 11.05 (West) ("A permittee may not consent to or allow the use of display of the permittee's permit by a person other than the person to whom the permit was issued.")

(Bankr. N.D. Tex. Feb. 22, 2022) (citing *In re Humble Place Joint Venture*, 936 F.2d 814, 816–17 (5th Cir. 1991)); *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 270 (Bankr. N.D. Tex. 2021)). A movant seeking dismissal for "cause" must satisfy the initial burden of proving a *prima facie* lack of good faith in filing the bankruptcy case, and then the burden shifts to the debtor to demonstrate good faith. *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. at 270.

27. Here, the Movants can easily demonstrate *prima facie* evidence of bad faith: The Case was filed on the eve of trial on the State Court Action; Dungan admitted at the 341 Meeting that the State Court Action was the motivating factor for the filing; the Debtor postpetition has transferred all of its assets and revenue to the Transferred Entity, a company owned and controlled by Dungan; the Debtor alleges to have no employees. The only material creditor is Movant. Dungan filed this case to delay litigation against himself and the Debtor and to forum shop. Additionally, the material omissions in the Original Bankruptcy Schedules and the Third Amended Schedules are further evidence of the lack of good faith. This has all the indicia of bad faith.

**B.     The Debtor Cannot Demonstrate Good Faith in Filing this Case.**

28. Having demonstrated prima facie evidence of bad faith, it is the Debtor's burden to establish a good faith basis for the filing of this Case. For a case to be considered a good-faith filing, "the primary purpose of the filing must be to reorganize or to respond to financial crisis." *In re Stephens*, 2022 WL 534011 at * 7 (citing *In re Antelope Techs., Inc.*, 431 Fed. Appx. 272, 275 (5th Cir. 2011)). "[C]ourts have held that a Chapter 11 petition is not filed in good faith unless it serves a valid bankruptcy purpose." *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. at 270–71 (citing *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir. 1999)). The Debtor cannot carry this burden.

13

29. The Debtor's Case is not motivated by reorganizing or finding a way to pay creditors over time through a consensual or non-consensual plan. Rather, the Debtor has filed the Case solely to avoid or delay the adjudication of the State Court Action to change venue of the State Court Action. These reasons do not serve a legitimate bankruptcy purpose, and therefore the Case should be dismissed.

30. After completing the entire pre-trial process and at the eve of trial in the State Court Action, the Debtor filed this Case and then promptly removed the State Court Action to this Court to change venue as admitted by Dungan at the 341 Meeting. Specifically, Dungan stated that the bankruptcy was filed because the Debtor wanted to litigate the State Court case in a "fair forum."

31. The Debtor cannot genuinely contend that this Case will allow an expeditious adjudication of the claims asserted in the State Court Action. Were that the real purpose of this Case, the Debtor would simply have agreed to lift the automatic stay to allow the trial to proceed to conclusion, with the judgment to be addressed through a plan. The Debtor did not choose such a legitimate path. Instead, Dungan and the Debtor chose to use this Case as a litigation tactic to delay the adjudication of the Movant's State Court Action. Such a litigation strategy should not be allowed.

32. At the 341 Meeting, Dungan made several other statements under oath undermining any potential evidence that it filed this Case in good faith. Alarmingly, Dungan admitted that he transferred the revenue and cash of the Debtor to a third party company that he owns and controls (the Transferred Entity) and did so without any consideration being paid to the Debtor.

33. The Debtor's actions and inactions in this Case further undermine any attempts to establish good faith. The Debtor has utterly failed to provide requisite information for the bankruptcy filing and information required by the U.S. Trustee.

14

34. The failure to cooperate with the bankruptcy requirements in combination with the other circumstances of this Case—including that the Debtor has no ongoing operations, no ongoing projects, no ongoing revenue, and no employees—show that the Debtor's only goal in filing the Case is to delay further adjudication of the State Court Action. The Case and subsequent removal action simply demonstrate unreasonable litigation tactics of delay and forum shopping. Because this Case can serve no valid bankruptcy purpose, it should be dismissed. *See generally In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262 (explaining that there must be a valid bankruptcy purpose to support that the bankruptcy was filed in good faith).

35. The Movant asserts that "cause" exists to dismiss the bankruptcy case for all of the reasons included in 11 U.S.C. §1112(b)(4) including continuing loss to or diminution of the estate, absence of a reasonable likelihood of rehabilitation, gross mismanagement of the estate, failure to maintain insurance, unexcused failure to satisfy timely filing reporting requirements and failure to attend a scheduled 341 meeting.

36. The Movant asserts that it is in the best interest of creditors and the estate to dismiss this bankruptcy case.

**C.    This Case Should be Dismissed Because the Debtor is Not a Debtor Under Section 1182.**

37. The Debtor filed this case as a Subchapter V chapter 11 case. 11 U.S.C.§ 1182(1)(A) provides that a "debtor" is a "…person engaged in commercial or business activities…." Debtor takes the position, through its bankruptcy schedules and the testimony of Dungan at the 341 meetings, that the Debtor has no tangible assets, no operations, no business activities and no revenues[5]. If the Debtor is taken at its word, it cannot be a debtor under Subchapter V of title 11 and this bankruptcy case should be dismissed for this reason alone.

---

[5] Movant reserves all rights and claims to the contrary.

15

4875-8510-1728

38. Moreover, under section 1189 of the Bankruptcy Code, the Debtor must file a plan no later than 90 days after the Petition Date. 11 U.S.C. § 1189(b). The Debtor has no employees, no current revenue stream, and no current or future work, and therefore no prospect of confirming a Subchapter V plan of reorganization. The Debtor claims to have no assets. The Debtor claims to have had $0 in revenue in 2023. Simply put, the Debtor has no cash or revenue to confirm a plan in this Case.

39. Without revenue, the Debtor cannot present a feasible plan or otherwise meet the requirements to confirm a plan under section 1191 of the Bankruptcy Code. Additionally, even if the Debtor could present a plan with meaningful recoveries for creditors, the Debtor's actions to date demonstrate no intent or desire to allow final adjudication of the State Court Action. Because the Debtor's Case was filed for improper purposes and serves no true reorganizational purpose authorized by the Bankruptcy Code, the Case should be dismissed. Additionally, due to the actions and inactions of the Debtor in this case, the Movant requests that the Court dismiss the bankruptcy case with prejudice to refiling same for (180) one hundred and eighty days.

**II.    Alternatively, the Case Should be Converted to a Case Under Chapter 7 of the Bankruptcy Code.**

40. Alternatively, based upon the matters set forth above, Movant requests that the Court remove the Debtor as a debtor in possession for cause pursuant to 11 U.S.C. § 1185(a). In the event the Court determines there is no "cause" to dismiss the case, the Court should convert the case to a case under Chapter 7 of the Bankruptcy Code. For the reasons stated above, there is no likelihood of a successful Subchapter V reorganization and there is substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation such that conversion would be warranted.

4875-8510-1728

**WHEREFORE**, Movant respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A** (a) dismissing this Case with prejudice for 180 days and remanding the Adversary Proceeding; or (b) in the alternative, converting this Case to Chapter 7 or remove Debtor as a debtor in possession; and (c) granting such other and further relief as may be just and proper.

Respectfully submitted this 30th day of January 2024.

**GRAY REED**

By: */s/ Micheal W. Bishop*
    Micheal W. Bishop
    Texas Bar No. 02354860
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:   (214) 954-4135
Facsimile:   (214) 953-1332
Email:   mbishop@grayreed.com

-and-

    Preston T. Kamin
    Texas Bar No. 24062817
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone:   (713) 986-7000
Facsimile:   (713) 986-7100
Email:   pkamin@grayreed.com

*Counsel to Salt & Pepper Restaurants LLC*

**CERTIFICATE OF SERVICE**

I certify that on January 30, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Eastern District of Texas to all parties authorized to receive electronic notice in this case, and to the people listed on the mailing matrix attached hereto:

    */s/ Micheal W. Bishop*
    Micheal W. Bishop

4875-8510-1728

**Mailing Matrix**

4875-8510-1728

| | | |
|---|---|---|
| **Access Receivables**<br>c/o Windstream Holdin<br>11350 McCormick Rd.<br>Executive Plaza, Suite 800<br>Hunt Valley, MD 21031 | **Bank South**<br>c/o Texas SoS<br>1019 Brazos Street<br>Austin, TX 78701 | **Corporation Service Co.**<br>251 Little Falls Drive<br>Wilmington, DE 19808 |
| **CT Lien Solutions**<br>2929 Allen Parkway, Suite 100<br>Houston, TX 77019 | **Gardner Haas PLLC**<br>2501 N. Harwood, Suite 1250<br>Dallas, TX 75201 | **Internal Revenue Service**<br>Special Procedures Staff – Insolvency<br>P. O. Box 7346<br>Philadelphia, PA 19101-7346 |
| **Linebarger Goggan Blair<br>& Sampson LLP**<br>PO box 2789<br>Texas City, TX 77592 | **NCR Corporation**<br>864 Spring St. NW<br>Atlanta, GA 30308 | **Perdue Brandon Fielder Collins & Mott**<br>1235 North Loop West, Suite 600<br>Houston, TX 77008 |
| **Salt & Pepper Restaurants, Inc.**<br>c/o Gray Reed - Preston T Kamin<br>1300 Post Oak Blvd., Suite 2000<br>Houston, TX 77056 | **Scott Smith**<br>8600 Amen Corner<br>Flower Mound, TX 75022 | **Texas Comptroller**<br>P.O. Box 149356<br>Austin, TX 78714 |
| **Timothy M Dungan**<br>1603 Wildfire Lane<br>Frisco, TX 75033 | **U.S. Small Business Administration**<br>10737 Gateway West, #300<br>El Paso, TX 79935 | **Tight Ends Sports Bar & Grill, LLC**<br>2591 Dallas Parkway, Suite 300<br>Frisco, TX 75034 |