**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 23-42104** |
| **TIGHT ENDS SPORTS BAR & GRILL, INC.,** | § | |
| | § | |
| Debtor. | § | |

**FIRST AMENDED SUBCHAPTER V PLAN OF REORGANIZATION OF TIGHT ENDS SPORTS BAR & GRILL LLC DATED March 7, 2024**

## 1.  INTRODUCTION AND BACKGROUND INFORMATION.

1.1.  This First Amended Plan of Reorganization (the "_Plan_") under Subchapter V of Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq. (the "_Code_") is filed by Tight Ends Sports Bar & Grill LLC (the "_Debtor_" or "_TE Grill_").

1.2.  TE Grill filed this case on November 3, 2023 (the "_Petition Date_").  Scott Seidel is the Subchapter V Trustee.

1.3.  For convenience, this plan is based upon the former official small business form, Form B25B. _Controlling definitions and rules of construction appear in Section 9 below._

1.4.  The Plan provides for the full payment of all allowed claims, expect potentially for any eventually allowed general unsecured claim of Salt & Pepper Restaurants Inc.

1.5.  All creditors and equity security holders should refer to Section 3 through Section 6 of this Plan for information regarding the precise treatment of their claim. _You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)_

1.6.  **Description and History of the Debtor's Business.**

    1.6.1.  The Debtor once operated two sports bar restaurant locations, one in Plano which opened in November, 2015 and a second location in League City, Texas which opened in September, 2016.

    1.6.2.  The League City location closed in April, 2022 in connection with the dispute between the Debtor and the landlord of the League City location, Salt & Pepper Restaurants Inc. ("_SNP_") which dispute is described below.

    1.6.3.  The fallout from the dispute between the Debtor and SNP resulted in the landlord of the Plano location insisting that the restaurant continue only in a new lease under a new entity. Consequently, on March 1, 2022, QSL Realty Plano LLC as Landlord and TE of North Texas LLC ("_TENTX_") entered into a new lease for the same building.  Some aspects of the operation of the Plano location continued under the name of the Debtor into late 2023 and early 2024, such as, for example, the state liquor license.  Each landlord owns/owned

substantially all of the personal property and contents of each restaurant location. All of the intellectual property associated with the Tight Ends brand is owned by a separate entity which entity is owned and controlled by Tim Dungan, and such intellectual property was never owned by the Debtor.

1.7.    **Insiders and Management of TE Grill.** Tim Dungan is the sole member of the Debtor, and is the manager and/or president of the Debtor. He will continue in the same capacity after confirmation. He receives no salary or income from the Debtor as of the Petition Date, and will receive no income or salary following confirmation.

1.8.    **Significant events before and during the Chapter 11 case.**

1.8.1.    The genesis of this case is the dispute and ultimately the Lawsuit (as defined below) between the Debtor and the landlord of the former League City, Texas location which Lawsuit was removed to the court and is now the subject of an adversary proceeding pending in this Court, Adv. No. 23-04100.

1.8.2.    ***For the avoidance of doubt, the pleadings on file in the Lawsuit control over any reference to or description of the Lawsuit in this Plan.*** The following information regarding the procedural history of the Lawsuit is provided as background and disclosures in connection with the Plan as contemplated by Code §1190.

1.8.3.    On or about May 20, 2016, SNP, as Landlord, and Debtor, as Tenant, entered into a fifteen-year lease agreement for the commercial space commonly as known as 2502 Gulf Freeway, League City, Galveston County, Texas 77573 (the "*Lease Agreement*").[1]

Beginning in April of 2020, Debtor experienced difficulties paying the amounts due under the Lease Agreement.[2] SNP claims that the Debtor also committed several additional defaults under the Lease Agreement, including, failing to provide evidence of insurance, certified financials, allowing Debtor's guarantor to be insolvent and cease to exist, and abandoning the premises, as well as allegedly stealing SNP's property.[3]

On April 20, 2022, SNP filed its Plaintiff's Original Petition and commenced Cause No. 22-cv-0675, *Salt & Pepper Restaurants, Inc., Plaintiff v. Tight Ends Sports Bar & Grill, LLC and Timothy Dungan, Defendants* in the 56th District Court, in and for Galveston County, Texas (the "*Lawsuit*").

On or about June 1, 2023, SNP filed its First Amended Petition against Debtor asserting causes of action for these alleged breaches of the Lease Agreement and fraud by non-disclosure.[4]

On or about November 28, 2022, Debtor filed its First Amended Answer & Counterclaim to SNP's First Amended Petition.[5] Debtor generally denied all allegations in the First Amended Petition and asserted several affirmative defenses—in particular, SNP fraudulently induced Debtor to enter the Lease Agreement by misrepresenting that Debtor

---

[1] See Adv. No. 23-04100, Dkt.No. 1, Exhibit GC089, Plaintiff's First Amended Petition at ¶ 7.
[2] See Adv. No. 23-04100, Dkt.No. 1, Ex. GC089 at ¶ 10.
[3] See Adv. No. 23-04100, Dkt.No. 1, Ex. GC089 at ¶¶ 11-15.
[4] See Adv. No. 23-04100, Dkt.No. 1, Ex. GC089 at ¶¶ 17-27.
[5] See generally Adv. No. 23-04100, Dkt.No. 1, Exhibit GC069.

and its customers would have easy access to the leased premises, when SNP knew this was not true.[6]  This misrepresentation forms the basis of Debtor's Counterclaim.

Debtor's business model is built on robust daytime and early-evening crowds, which require easy access to Debtor's business locations. Debtor entered the Lease Agreement with SNP because it appeared Debtor's customers would have easy access to the premises in question, much like the access Debtor's customers have at the highly successful Plano location.[7]  This was a material consideration in Debtor's decision to enter the agreement.[8]

SNP knew but failed to disclose to Debtor that the Texas Department of Transportation planned to close the exit ramp allowing access to the premises for construction purposes— a condition that would and ultimately did have an immense negative impact on Debtor's sales.

As such, Debtor filed its Counterclaim against SNP, asserting claims for violation of the Texas Deceptive Trade Practices Act, fraudulent inducement, and negligent misrepresentation based on the misrepresentation regarding the road closure, among other things.[9]

Trial was set to commence in the Lawsuit on the Petition Date.

On November 8, 2023, Debtor removed the Lawsuit to U.S. Bankruptcy Court for the Southern District of Texas.

On December 18, 2023, the Lawsuit was transferred to this Court under Adv. 23-04100.

As of the filing of this Plan, a hearing on a motion to remand to state court filed by SNP is set for hearing on April 23, 2024.

1.8.4.    With respect to the Lawsuit, SNP has made much of the procedural history in which a summary judgment was granted in the state court against some or all of the claims of the Debtor in the Lawsuit.  However, that summary judgment order adverse to the Debtor should be vacated.

SNP filed suit in Galveston County on April 20, 2022, alleging that the Debtor failed to pay rent for a period of the parties' commercial lease.

SNP had already filed a motion for summary judgment against the Debtor's claims on January 10, 2023.[10]

That motion for summary judgment was denied by the Court on February 7, 2023.[11]

On July 25, 2023, previous counsel for the Debtor suffered numerous seizures and was hospitalized for seven days.  He was unable to work (or even drive) until January, 2024.

---

[6] See Adv. No. 23-04100, Dkt.No. 1, Ex. GC069 at ¶¶ 1-6.
[7] See Adv. No. 23-04100, Dkt.No. 1, Ex. GC069 at ¶ 13.
[8] See Adv. No. 23-04100, Dkt.No. 1, Ex. GC069 at ¶ 13.
[9] See Adv. No. 23-04100, Dkt.No. 1, Ex. GC069 at ¶¶ 18-27.
[10] See Adv. No. 23-04100, Dkt.No. 1, Exh. GC075.
[11] See Adv. No. 23-04100, Dkt.No. 1, Exh. GC083.

He sent an email to SNP's counsel stating that he had a serious seizure and was hospitalized.

On August 23, 2023, SNP filed a motion for summary judgment on the Debtor's claims.[12]

On August 30, 2023, the Debtor promptly filed a motion to continue the trial setting and the hearing on the motion for summary judgment. The motion also sought to allow the Debtor's counsel to withdraw, given his medical condition.[13]

SNP's counsel did not file a response to the motion.[14]

The motion for continuance was granted on September 5, 2023, and the Court's order states the following.[15]

> Tight Ends Sports Bar & Grill, LLC is also instructed that a limited liability company must
> be represented by an attorney. If an attorney does not appear on behalf of this entity within 30 days
> of the entry of this order, then the Court may strike its pleadings or take other actions that may be
> adverse to the entity.

On September 18, 2023, only 13 days after signing an order instructing the Debtor that it could not represent itself and giving the Debtor 30 days to hire counsel and file a notice of appearance, the State Court inexplicably signed an order granting SNP's motion for summary judgment on all of the Debtor's claims.[16]

Dismissal of Debtor's claims will cause harm to the Debtor and/or and the underlying bankruptcy estate by preventing Debtor from arguing its affirmative defenses and its claim against SNP, which the Debtor will prove is worth far more than the SNP's claims against the Debtor.

If the order granting the summary judgment is vacated, then the Debtor will promptly proceed to judgment against SNP.

1.8.5.   The loss in sales from the commencement of construction was precipitous, and pre-Covid resulted in a loss of at least 20% per month of net sales on average.

| TIGHT ENDS LEAGUE CITY NET SALES | | | |
|---|---|---|---|
| Year | Month | Sales | % of Jan.-May 2017 Monthly Ave. |
| 2016 | Sep | $12,741.84 | |
| | Oct | $539,025.07 | |
| | Nov | $433,740.44 | |
| | Dec | $488,325.71 | |

---

[12] See Adv. No. 23-04100, Dkt.No. 1, Exh. GC092.
[13] See Adv. No. 23-04100, Dkt.No. 1, Exh. GC096.
[14] See Adv. No. 23-04100, Dkt.No. 1, Exh. GC001.
[15] See Adv. No. 23-04100, Dkt.No. 1, Exh. GC098.
[16] See Adv. No. 23-04100, Dkt.No. 1, Exh. GC100.

| Year | Month | Sales | % of Jan.-May 2017 Monthly Ave. |
|---|---|---|---|
| **TIGHT ENDS LEAGUE CITY NET SALES** | | | |
| 2017 | Jan | $461,820.08 | |
| | Feb | $423,274.34 | |
| | Mar | $477,450.62 | |
| | Apr | $400,610.31 | |
| | May | $362,965.03 | |
| Jan.-May 2017, Ave. Monthly Sales = $425,224 | | | |
| Construction Begins June, 2017 | | | |
| | Jun | $376,851.19 | 88.62% |
| | Jul | $343,496.11 | 80.78% |
| | Aug | $285,065.89 | 67.04% |
| | Sep | $426,833.52 | 100.38% |
| | Oct | $434,200.44 | 102.11% |
| | Nov | $394,884.45 | 92.87% |
| | Dec | $433,340.93 | 101.91% |
| 2018 | Jan | $397,908.69 | 93.58% |
| | Feb | $358,711.48 | 84.36% |
| | Mar | $406,335.48 | 95.56% |
| | Apr | $367,417.72 | 86.41% |
| | May | $347,580.98 | 81.74% |
| | Jun | $343,864.83 | 80.87% |
| | Jul | $329,726.33 | 77.54% |
| | Aug | $374,764.41 | 88.13% |
| | Sep | $336,285.00 | 79.08% |
| | Oct | $353,842.88 | 83.21% |
| | Nov | $354,674.11 | 83.41% |
| | Dec | $346,259.52 | 81.43% |
| 2019 | Jan | $333,265.55 | 78.37% |
| | Feb | $307,013.61 | 72.20% |
| | Mar | $327,139.34 | 76.93% |
| | Apr | $315,673.17 | 74.24% |
| | May | $315,213.02 | 74.13% |
| | Jun | $272,348.54 | 64.05% |
| | Jul | $286,742.11 | 67.43% |
| | Aug | $343,938.17 | 80.88% |
| | Sep | $295,698.67 | 69.54% |
| | Oct | $330,586.65 | 77.74% |
| | Nov | $308,516.28 | 72.55% |
| | Dec | $294,885.10 | 69.35% |
| 2020 | Jan | $311,915.98 | 73.35% |
| | Feb | $305,299.56 | 71.80% |
| | Mar | $176,174.35 | n/a Covid |
| | Apr | $0.00 | n/a Covid |
| | May | $0.00 | n/a Covid |
| | Jun | $95,313.00 | n/a Covid |
| | Jul | $180,928.00 | n/a Covid |
| | Aug | $51,533.00 | n/a Covid |
| | Sep | $212,405.00 | 49.95% |
| | Oct | $282,115.00 | 66.35% |
| | Nov | $243,761.00 | 57.33% |
| | Dec | $233,759.00 | 54.97% |
| 2021 | Jan | $275,008.00 | 64.67% |

| TIGHT ENDS LEAGUE CITY NET SALES | | | |
|---|---|---|---|
| Year | Month | Sales | % of Jan.-May 2017 Monthly Ave. |
| | Feb | $187,232.00 | 44.03% |
| | Mar | $302,694.00 | 71.18% |
| | Apr | $292,617.00 | 68.81% |
| | May | $288,377.00 | 67.82% |
| | Jun | $268,226.00 | 63.08% |
| | Jul | $276,827.00 | 65.10% |
| | Aug | $268,732.00 | 63.20% |
| | Sep | $256,921.00 | 60.42% |
| | Oct | $303,042.00 | 71.27% |
| | Nov | $246,013.00 | 57.85% |
| | Dec | $258,570.00 | 60.81% |
| 2022 | Jan | $254,665.00 | 59.89% |
| | Feb | $241,106.00 | 56.70% |
| | Mar | $281,978.00 | 66.31% |
| CLOSED | Apr | $77,956.00 | 18.33% |

1.8.6.   The Debtor supplied voluminous document production and/or disclosures to SNP in connection with the meeting of creditors. SNP also conducted voluminous discovery during the Lawsuit. SNP alleges that the Debtor inappropriately transferred resources of the Debtor to TENTX and/or Dungan, and has demanded that the Debtor sue TENTX and/or Dungan. The Debtor, TENTX, and Dungan dispute the allegations of SNP but nonetheless preserve the possibility of any and all such claims through this Plan to be addressed, investigated, and/or adjudicated following confirmation.

1.8.7.   *Events during and information relating to this Bankruptcy Case:* The entirety of the events that have occurred during this Chapter 11 case may be found on docket sheet of this case available at the Court or through the PACER website of the Court, ***https://ecf.txwb.uscourts.gov/***.

1.8.8.   *Recovery of avoidable transfers and other claims and causes of action of the estate.* TE Grill shall **RETAIN** avoidance actions or any other claims, causes of action, and/or any and all other lawsuits under Code §§544, 547, 548, 549, and/or 550, including any objections to claims and any related set offs, and any and all facts, claims, issues, rights, remedies, and/or defenses related thereto, including the claims and causes of action set forth in **Exhibit TIG305**. *See also* Plan § 1302 below.

> *Otherwise, TE Grill may provide notice of additional claims and/or causes of action by a supplement to the Plan to be filed within seven (7) days of the Confirmation Hearing.*

1.8.9.   *Objections to Claims.* Except to the extent that a claim is already allowed pursuant to a final non-appealable order, TE Grill reserves the right to object to all claims (including scheduled claims which were not previously scheduled as disputed, contingent, and/or unliquidated) through and until and even after the Effective Date. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld.

1.9.    **Current And Historical Financial Conditions.**

    1.9.1.    The assets and liabilities of TE Grill are described in the Schedules (Docket No. 16) and Statement of Financial Affairs (Docket No. 32) filed by TE Grill in this case.  A summary of the assets of and claims against TE Grill appears in **Exhibit TIG301**[17]_ and **Exhibit TIG302** attached hereto.  The deadline for filing proofs of claim occurred/occurs on January 12, 2024, and May 1, 2024 for governmental entities.

    1.9.2.    A liquidation analysis appears in **Exhibit TIG303**.

    1.9.3.    Projections and/or a cash budget in support of the Plan appear in **Exhibit TIG304**.

    1.9.4.    TE Grill reserves the right to amend any of the schedules and other information in support of the Plan prior to the Confirmation Hearing.

> **NO CLAIM SHOULD BE DEEMED TO BE ALLOWED IN ANY PARTICULAR AMOUNT BASED UPON A DESCRIPTION OR REFERENCE TO ANY SUCH CLAIM OR TO ANY CLASS OF CLAIMS IN THE EXHIBITS.  THE DEBTOR DOES NOT WAIVE ANY FACT, CLAIM, ISSUES, RIGHT, REMEDY, AND/OR DEFENSE WITH RESPECT TO A DESCRIPTION OR REFERENCE TO ANY CLAIM IN THE EXHIBITS.**

**2.    [section reserved]**.

**3.    CLASSIFICATION OF CLAIMS**

The classification of claims and interests and the impairment of claims and interests is set forth in Sections 3-4 below and/or in the Exhibits to the Plan.

**4.    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

4.1.    **Unclassified Claims.**  Certain types of claims are automatically entitled to specific treatment under the Code.  Under Code §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.  They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, pursuant to Code §1129(a)(1), the Debtor has *not* placed such claims in any class.

4.2.    **Administrative Expenses.**  Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code §507(a)(2).  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to different treatment.

---

[17] The Debtor is consecutively numbering all exhibits throughout this case.  The exhibits related to the plan and disclosure statement will being with the number 300 beginning with the ballot exhibit to distinguish from previous exhibits used in this case.

As of the filing of this Plan, the Debtor has received no notice of any administrative expense, other than attorneys' fees and expenses of Weycer Kaplan Pulaski & Zuber P.C. ("*WKPZ*") incurred for TE Grill and the fees of the Subchapter V Trustee.

4.3.    **Priority Tax Claims.**  Priority tax claims are unsecured income, employment, and other taxes described by Code §507(a)(8). Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

However, because of the age and small amount of the priority property tax claims, Debtor may also elect to pay these claims in full within thirty (30) days of the Effective Date.

**5.    TREATMENT OF CLAIMS AND INTERESTS.**  The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

5.1.    **Class 1 — Secured Ad Valorem Taxes**

5.1.1.    Identity of Claims in Class:  Class 1 consists of the allowed secured claim(s) of any governmental entity asserting ad valorem property tax claims against any property of the Debtor (collectively, the "Ad Valorem Tax Claimants").

It is likely that all of such claims are unsecured and constitute Code §507(a)(8) priority tax claims at this point in time, due to the lack of any current or recent real property and/or business personal property subject to such taxes.

5.1.2.    Treatment:  The holders of allowed claims in Class 3 will receive payment in full within thirty (30) days of the Effective Date.

5.1.3.    Voting.  Class 1 is IMPAIRED and may vote for or against the Plan.

5.2.    **Class 2 — Unsecured claim of Salt & Pepper Restaurants Inc.**

5.2.1.    Identity of Claims in Class:  Class 2 consists of the disputed claims of SNP.

5.2.2.    Treatment:

The claim of SNP is disputed and is the subject of the Lawsuit.  Ultimately, the Debtor believes that the Debtor will obtain a net recovery against SNP.  The Debtor will continue prosecution of the Lawsuit (including the counterclaims of the Debtor, any and all of which would constitute unsecured claims if allowed) in this Court through Adv. No. 23-04100 through its final adjudication and/or final appellate outcome.

Any resulting allowed unsecured claim in favor of SNP will be paid by the net proceeds of any assets of the Plan Trust.

**SETTLEMENT AND PAYMENT ELECTION.**  If SNP elects at or before confirmation, the Debtor will pay $100,000 to SNP within thirty (30) days of the Effective Date for a full global resolution of all claims and controversy and a full and mutual global release by and among the Debtor and SNP and the insiders of each, including Tim Dungan and the principals of SNP.

5.2.3.    <u>Voting.</u>  Class 2 is IMPAIRED and may vote for or against the Plan.

5.3.    **Class 3 — General Unsecured Claims.**  This class consists of allowed general unsecured claims that are not secured by property of the estate and that are not entitled to priority under §507(a) of the Code.

5.3.1.    <u>Identity of General Unsecured Claims:</u>  As set forth in TIG302, the Class 3 general unsecured creditors consist of general unsecured claims asserted in aggregate amount of approximately $4,657.00.[18]

5.3.2.    <u>Treatment of General Unsecured Claims:</u>  The holders of allowed claims in Class 3 will receive payment in full within thirty (30) days of the Effective Date.

5.3.3.    <u>Voting.</u>  Class 3 is IMPAIRED and may vote for or against the Plan.

5.4.    **Class 4 — Small Business Administration EIDL Loan.**

5.4.1.    <u>Identity of General Unsecured Claims:</u>  This is an SBA EIDL Covid-era small business relief loan.  Tim Dungan is personally guaranteed on the loan.  Accordingly, he has continued to service the debt according to its contractual terms since the closing of the League City location.

5.4.2.    <u>Treatment of General Unsecured Claims:</u>  Tim Dungan will continue to service this the SBA EIDL loan according to its contractual terms.

5.4.3.    <u>Voting.</u>  Class 4 is UNIMPAIRED and is deemed to accept the Plan.

5.5.    **Class 5 — General unsecured claims of insiders.**  No general unsecured claims of insiders are known to exist as of the filing of the Plan.

5.6.    **Class 6 — Class of Equity Interest Holders.**  The holders of equity interests in the Debtor will retain their interests.  Thus, Tim Dungan will remain the sole member of the Debtor.

Class 6 is UNIMPAIRED and is deemed to accept the Plan.

**6.    <u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>**

6.1.    <u>Disputed Claim.</u> A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

***Without limiting future potential claim objections, the Debtor currently disputes certain claims identified in Section 5 above and/or Exhibit TIG302.***

6.2.    <u>Delay of Distribution on a Disputed Claim.</u>  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

---

[18] This Plan maybe amended if the Class 3 total set forth in Exhibit TIG302 exceeds the projected total of $4,657.00.

6.3.    Settlement of Disputed Claims.   After the Effective Date, the Debtor will have the power and authority to settle and compromise a disputed claim without court approval and without compliance with Bankruptcy Rule 9019.

**7.      PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

7.1.    The Debtor believes that there are no executory contacts or unexpired leases.  Any executory contacts or unexpired leases will be deemed to be rejected as of the entry of the Confirmation Order.

7.2.    **PROOF OF CLAIM FOLLOWING REJECTION:   A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than fourteen (14) days after the date of the order confirming this Plan.**   Any such claim will be treated, if allowed general unsecured claim and the general unsecured creditor class will be adjusted accordingly.

**8.       MEANS OF IMPLEMENTING THE PLAN.**

8.1.    **Sources of cash to fund the Plan.**

8.1.1.   The garnishment cash bond in Cause 23-42104 in the amount of $32,000 will be deemed to be released to the Debtor as of the entry of the Confirmation Order. The Confirmation Order will include instructions to the current holder of the bond to such effect.

8.1.2.   Tim Dungan will supply any additional funds necessary to meet the cash obligations of the Debtor as of the Effective Date as shown in "Cash Budget" column of Exhibit TIG304.

8.1.3.   Otherwise, Tim Dungan will fund the litigation necessary to complete the Lawsuit and recovery of assets of the estate from SNP in the Lawsuit.

8.2.    **Distribution of Payments.**   The reorganized Debtor shall be the disbursing agent for payments under the Plan, or in the event of a confirmation under Code §1191(b), then the Subchapter V Trustee shall act as the disbursing agent, unless the Court orders otherwise.  The Debtor hereby moves to be the disbursing agent in the event of confirmation under Code §1191(b).  *The Debtor intends to request that it be the disbursing agent at the Confirmation Hearing.*

8.3.    **Post-Confirmation Plan Trust**.

8.3.1.   Any retained claims will be assigned to a post-confirmation trust (the "*Plan Trust*").

8.3.2.   The documents to organize and establish the Plan Trust will be circulated with the plan supplement within seven (7) days before the Confirmation Hearing.

8.3.3.   The trustee of the Plan Trust (the "Plan Trustee") will be Scott Seidel, the Subchapter V Trustee appointed to this case, or another person as may be named to be the trustee.

8.3.4.   The Debtor and/or the estate will transfer to the Plan Trust any and all Estate Claims, including any potential Estate Claims against TENTX and/or Tim Dungan.  The Estate Claims may then be investigated by the Plan Trustee prosecuted for the satisfaction of any claims not otherwise paid and/or disposed of under this Plan.

8.3.5.   The Plan Trust will receive $5,000 within thirty (30) days of the Effective Date as part of the Cash Budget (see Exhibit TIG304) to investigate the Estate Claims and to otherwise fund the activities of the Plan Trustee.

8.3.6.   The Debtor will supply to the Plan Trust and Plan Trustee any production made to the U.S. Trustee and/or SNP prior to or during this case.

8.3.7.   The Plan Trust and Plan Trustee will also be provided with copies of and/or access to the books and records of the Debtor, to the extent that such books and records currently exist.

8.4.   **Post-confirmation Management.**  The post-confirmation management of the Debtor shall consist of Tim Dungan.

8.5.   **Risk Factors.**  The proposed Plan has the following risks:  The Debtor could not prevail in the Lawsuit against SNP and/or could not be able to collect any net judgment.  Any Estate Claims may possess no value.

## 9.   GENERAL PROVISIONS

9.1.   **Definitions and Rules of Construction.** The definitions and rules of construction set forth in Code §§101 and 102 shall apply when terms are defined or construed in the Code.  Other terms are defined throughout the Plan, and terms may be defined in, and then used in the Plan and vice versa.

9.1.1.   Any reference to the Debtor that applies to any period of time after the Effective Date shall refer to the Debtor as the Reorganized Debtor.  In addition, the following terms used in the Plan are defined below.

9.1.2.   *"Confirmation Hearing"* shall mean and refer to the hearing conducted by the Court to consider this Plan.

9.1.3.   "*Confirmation Order*" shall mean and refer to the order confirming this Plan.

9.1.4.   "*Estate Claims*" shall mean and refer to any claims and/or causes of action of the Debtor and/or the estate identified in the schedules, the SOFA, the Plan (including Plan §§ 1.8.8 and 13.2 and/or Exhibit TIG305), and/or the Plan Supplement.

9.2.   **Severability.**  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.3.   **Captions**.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.4.   **Primacy of the Plan and Confirmation Order.**  To the extent of any conflict or inconsistency between the provisions of the Plan on the one hand, and the Confirmation Order on the other hand, the provisions of the Confirmation Order shall govern and control.  *Unless directed by the Court to so earlier, the Debtor will file notice of a proposed Confirmation Order seven (7) days prior to the Confirmation Hearing.*

9.5.   **Binding Effect.**  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.6.    **Controlling Effect.**  Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

9.7.    **Corporate Governance.**  After the Effective Date of the order confirming the Plan, the management of the Debtor will consist of Tim Dungan.

9.8.    **Corporate Authority.**  All actions and transactions contemplated under the Plan shall be authorized upon confirmation of the Plan without the need of further approval, notice or meetings, that might otherwise be required under applicable state law or otherwise, other than the notice provided by serving this Plan on all known creditors of TE Grill, all interest holders, and all current directors or managers of TE Grill.

9.9.    **Sales of Property.**  [section omitted / reserved / not applicable].

9.10.   **Fixing of Claims.**  To the extent that the modification and/or fixing of any claim occurs under the Plan, the Plan also constitutes an objection to any filed proof of claim and/or scheduled claim under Code §502 and/or Bankruptcy Rules 3007 and 9014, and any applicable Local Rules.

9.11.   **Settlement of Claims and Disputes.**  The Plan also constitutes a motion under Bankruptcy Rule 9019 to the extent necessary to confirm the Plan.

9.12.   **Debtor name change.**  The Debtor may change its name and/or adopt one or more business aliases after the Effective Date.

9.13.   **Debtor-in-Possession Counsel**.  For the avoidance of doubt, Weycer, Kaplan, Pulaski & Zuber, P.C. ("WKPZ") and any other counsel retained by the Debtor under order of the Court prior to the Effective Date of the Plan shall no longer be considered counsel to the Debtor-in-Possession as of the Effective Date.  WKPZ may be retained by the Reognaized Debtor on and/or after the Effective Date.

## 10. EFFECT OF CONFIRMATION OF PLAN — DISCHARGE

On the Effective Date (as defined below) of the Plan, the Debtor shall cease to be a debtor-in-possession and shall be a Reorganized Debtor.  Also on the Effective Date, the Debtor shall be discharged from any debt that arose before confirmation of the Plan, subject to the occurrence of the Effective Date, to the extent specified in Code §1141(d)(1)(A) except that the Debtor shall not be discharged of any debt (i) imposed by the Plan, (ii) of a kind specified in Code §1141(d)(6)(A) if a timely complaint was filed in accordance with Bankruptcy Rule 4007(c), or (iii) of a kind specified in Code §1141(d)(6)(B).  After the Effective Date of the Plan, any allowed claims against the Debtor will be limited to the debts described in clauses (i) through (iii) of the preceding sentence.

## 11. EFFECTIVE DATE OF PLAN.

The Effective Date of the Plan (the "*Effective Date*") shall be the first business day following the date that is fourteen (14) days after the entry of the order of confirmation.  If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay of the Confirmation Order expires or is otherwise terminated.  ***The Effective Date may occur without further notice by the Debtor***.

## 12. **FINAL DECREE**

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

## 13. **OTHER PLAN PROVISIONS**

13.1.  **Scope and Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to: *(i)* hear and determine pending applications for the assumption or rejection of contracts or leases and the allowance of Claims resulting therefrom; *(ii)* hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals, and including any Estate Actions; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under Bankruptcy Rule 9019 or otherwise as to the settlement or compromise of any Estate Actions post-Effective Date; *(iii)* ensure that distributions to holders of Allowed Claims are accomplished as provided herein; *(iv)* hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, estimation, or payment of any Claim or Interest, and to enter Estimation Orders; *(v)* hear and determine all Fee Applications and Fee Claims; provided, however, that the Reorganized Debtor shall not be required to seek or obtain approval of the Bankruptcy Court under section Code §330 or otherwise as to the allowance or payment of professional fees post-Effective Date; *(vi)* enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated; *(vii)* hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan; *(viii)* enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the Plan and the transactions contemplated thereunder; *(ix)* consider any modification of the Plan pursuant to Code § 1127, to cure any defect or omission or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order; *(x)* enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation or implementation of the Plan, including, without limitation, to issue, administer and enforce injunctions provided for in the Plan and the Confirmation Order; *(xi)* recover all assets of the Debtor and property of the estate, wherever located; *(xii)* hear and determine matters concerning state, local, and federal taxes in accordance with Code §§ 346, 505, and 1146; *(xiii)* hear and determine any other matter not inconsistent with the Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and enter a final decree closing the Bankruptcy Case; and *(xiv)* to reopen the case and enforce the Plan as set forth in Section 5 above.

13.2.  **Litigation and retained causes of action.**  TE Grill expressly retains the claims and causes of action referenced and described in **Exhibit TIG305.**  *See also*, Plan § 1.8.8 above.

> *Otherwise, TE Grill may provide notice of additional claims and/or causes of action by a supplement to the Plan to be filed within seven (7) days of the Confirmation Hearing.*

*{continued on following page}*

---

**FIRST AMENDED SUBCHAPTER V PLAN OF REORGANIZATION — Page 13**
plan subv tesbg 002 4858-1573-0859 v.4.docx[1]/4872-7307-4860, v. 1

**TIGHT ENDS SPORTS BAR & GRILL LLC,**
**DEBTOR AND DEBTOR-IN-POSSESSION**

**By:**

/s/ Tim Dungan _____
**By:  Tim Dungan, Manager/President**

**Counsel to the Debtor and**
**Debtor in Possession:**

**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
Jeff Carruth (SBT #24001846)
2408 Hibernia St. Ste 105
Dallas Texas 75204
(713) 341-1158
E-mail:  jcarruth@wkpz.com

**EXHIBIT TIG301**

| EXHIBIT TIG301 | | | | |
|---|---|---|---|---|
| Assets as of Petition Date | | | | |
| No Admission of Liability | | | | |
| **Asset Description** | | | **Value on Schedule A-B** | |
| BankSouth 6715 Payroll | | | 4,056.10 | |
| BankSouth 5972 (closed) | | | 0.00 | |
| Prosperity Bank 7432 (checking) | | | 11,000.00 | |
| Lease deposit with Salt & Pepper | | | 35,000.00 | |
| League City area name rights - "Tight Ends" | | | 10,000.00 | |
| Texas Liquour License | | | 0.00 | |
| Employee Retention Credit | | | 300,000.00 | estimated |
| Cause 23-42104 / claims vs Salt N Pepper | | | 2,600,000.00 | |
| Garnishment cash bond Cause 23-42104 | | | 32,000.00 | |
| **TOTAL** | | | **2,992,056.10** | |
| C:\Users\jcarruth\ND Office Echo\VAULT-C9SL72TY\[tesbg plan exhibits 002 4853-3600-5803 v.2.xlsx]TEG302 | | | | |

**EXHIBIT TIG302**

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | **EXHIBIT TIG302** | | | | | | |
| | | | | Scheduled Claims and Proofs of Claim Analysis | | | | | | |
| | | | | NO ADMISSION OF LIABILITY, ALL FACTS, CLAIMS, ISSUES, RIGHTS, REMEDIES, AND/OR DEFENSES RESERVED | | | | | | |
| ClaimNo | Class | Claimant | Secured | Priority | Unsecured | Total Claimed | Potential / Projected Allowed | Class Total | Cash Budget ED+30 | Notes |
| n/a | Admin | WKPZ-Carruth (above retainer, est.) | | 20,000 | | 20,000 | 20,000 | | | Subject to fee app. allowance. |
| n/a | Admin | SubVT-Seidel (above periodic payments, est.) | | 10,000 | | 10,000 | 10,000 | 30,000 | 30,000 | Subject to fee app. allowance. |
| 1 | 1 | Frisco Independent School District | | | 1,234 | 1,234 | 1,234 | | | |
| 2 | 1 | Collin County Tax Assessor/Collector | | | 779 | 779 | 779 | | | |
| 3 | 1 | Linebarger Goggan Blair & Sampson LLP | | | 10,684 | 10,684 | 10,684 | | | Galveston Co Prop Tax |
| 4 | 1 | Perdue Brandon Fielder Collins & Mott | | | 8,939 | 8,939 | 8,939 | | | Clear Creek ISD Tax |
| 5 | 1 | TXU | | | 3,533 | 3,533 | 0 | | | unpaid electric/utility balance- disputed, possibly claim of Plano restaurant |
| 7 | 1 | Texas Workforce Commission | | | 1,134 | 1,134 | 1,134 | 21,536 | 21,536 | unemployment taxes |
| 6 | 2 | Salt & Pepper c/o Gray Reed | | | 704,343 | 704,343 | 0 | | | Disputed, subject to counter claim. |
| Sched F | 3 | Access Receivables c/o Windstream Holdings | | | 33,655 | 33,655 | 0 | | | Telephone and internet - disputed, possibly claim of Plano restaurant |
| Sched F | 3 | NCR Corporation | | | 4,657 | 4,657 | 4,657 | 4,657 | 4,657 | |
| Sched F | 4 | U.S. Small Business Administration | | | 145,000 | 145,000 | 145,000 | 145,000 | | EIDL Loan (estimated claim) (pay per contract) |
| | | | | | TOTAL | 943,959 | 202,427 | 201,193 | 56,193 | |
| C:\Users\pjcarruth\ND Office Echo\VAULT-C9SL7ZTY\[testbg plan exhibits 002 4853-3600-5803 v.2.xlsx]TIG302 | | | | | | | | | | |

**EXHIBIT TIG303**

| EXHIBIT TIG303 | | | | |
|---|---|---|---|---|
| **Liquidation Analysis** | | | | |
| **No Admission of Liability** | | | | |
| **Asset Description** | **Value on Schedule A-B** | **Value in Plan** | **Value in Liquidation** | **Notes** |
| BankSouth 6715 Payroll | 4,056.10 | 0.00 | 0.00 | This was snapshot as petition date, account was open to permit payment of late-cashed paychecks of employees.  Net amount in liquidation would be $0.00 |
| BankSouth 5972 (closed) | 0.00 | 0.00 | 0.00 | |
| Prosperity Bank 7432 (checking) | 11,000.00 | 11,000.00 | 11,000.00 | |
| Lease deposit with Salt & Pepper | 35,000.00 | 35,000.00 | 0.00 | A liquidation assumes no defense of the SNP claims or recovery of affirmative claims of Debtor. |
| League City area name rights - "Tight Ends" | 10,000.00 | 0.00 | 0.00 | No value in liquidation, no "Tight Ends" intellectual property is owned by the Debtor. |
| Texas Liquor License | 0.00 | 0.00 | 0.00 | |
| Employee Retention Credit | 300,000.00 | 300,000.00 | 0.00 | Unknown if tax credit could be recovered in liquidation. |
| Cause 23-42104 / claims vs Salt N Pepper | 2,600,000.00 | 2,600,000.00 | 0.00 | A liquidation assumes no defense of the SNP claims or recovery of affirmative claims of Debtor. |
| Garnishment cash bond Cause 23-42104 | 32,000.00 | 32,000.00 | 0.00 | A liquidation assumes no defense of the SNP claims or recovery of affirmative claims of Debtor. |
| **TOTAL** | **2,992,056.10** | **2,978,000.00** | **11,000.00** | |
| C:\Users\jcarruth\ND Office Echo\VAULT-C9SL7ZTY\[tesbg plan exhibits 002 4853-3600-5803 v.2.xlsx]TEG303.LA | | | | |

## CASH BUDGET

| | | EXHIBIT TIG304 | | |
|---|---|---|---|---|
| | | PROJECTED CASH PAID EFFECTIVE DATE + 30 DAYS -- SEE ALSO EX. TIG302 | | |
| | | NO ADMISSION OF LIABILITY, ALL FACTS, CLAIMS, ISSUES, RIGHTS, REMEDIES, AND/OR DEFENSES RESERVED | | |
| ClaimNo | Class | Claimant | Cash Budget ED+30 | Notes |
| n/a | Admin | WKPZ-Carruth (above retainer, est.) | | Subject to fee app. allowance. |
| n/a | Admin | SubVT-Seidel (above periodic payments, est.) | 30,000 | Subject to fee app. allowance. |
| 1 | 1 | Frisco Independent School District | | |
| 2 | 1 | Collin County Tax Assessor/Collector | | |
| 3 | 1 | Linebarger Goggan Blair & Sampson LLP | | Galveston Co Prop Tax |
| 4 | 1 | Perdue Brandon Fielder Collins & Mott | | Clear Creek ISD Tax |
| 5 | 1 | TXU | | unpaid electric/utility balance- disputed, possibly claim of Plano restaurant |
| 7 | 1 | Texas Workforce Commission | 21,536 | unemployment taxes |
| 6 | 2 | Salt & Pepper c/o Gray Reed | | Disputed, subject to counter claim. |
| Sched F | 3 | Access Receivables c/o Windstream Holdings | | Telephone and internet - disputed, possibly claim of Plano restaurant |
| Sched F | 3 | NCR Corporation | 4,657 | |
| Sched F | 4 | U.S. Small Business Administration | | EIDL Loan (estimated claim) (pay per contract) |
| Plan | Plan | Plan Trust | 5,000 | |
| | | | 56,193 | |
| C:\Users\jcarruth\ND Office Echo\VAULT-C9SL7ZTY\[tesbg plan exhibits 002 4853-3600-5803 v.2.xlsx]TIG304 | | | | |

plan subv tesbg 002 4858-1573-0859 v.4.docx[5]/4872-7307-4860, v. 1

## EXHIBIT TIG305

## RETAINED CAUSES OF ACTION

Any and all avoidance actions under Chapter 5 of the Bankruptcy Code.

Any and all facts, claims, issues, rights, remedies, and/or defenses against Salt & Pepper Restaurants Inc., including all such matters presently asserted in the Lawsuit and/or Adversary No. 23-04100.

Any and all claims and/or causes of action of the Debtor and/or the Estate against Tight Ends of North Texas LLC.

Any and all claims and/or causes of action of the Debtor and/or the Estate against Tim Dungan.